UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                   :
LATIF MCKENZIE,
                                                   :
                       Petitioner,
                                                   :
        -against-                                      REPORT AND RECOMMENDATION
                                                   :
GARY GREENE, Superintendent, Great Meadow        05 Civ. 9420 (LTS)(KNF)
Correctional Facility,                                    :

                     Respondent.      :

------------------------------------------------------------ X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Latif McKenzie (" McKenzie") brings this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The petitioner alleges his confinement by New York State is unlawful because his trial counsel rendered ineffective assistance to him, in violation of his Sixth Amendment rights, when he failed to object to the admission, into evidence, of testimony from the crime victims about their pretrial identification of the petitioner as the perpetrator of the charged crimes. The respondent opposes the petition contending the state court's determination, that the petitioner received effective assistance from his trial counsel, was neither contrary to nor an unreasonable application of clearly established federal law.

## II. BACKGROUND

Benita Green ("Green") and Wendell McKenzie ("W. McKenzie") organized card

1

games, every six weeks at their apartment in Bronx County, New York, to which they invited people to attend and to play for money. On February 1, 1999, three men perpetrated a robbery, after invading the Green-W. McKenzie apartment. At the time of the robbery, Green, W. McKenzie, their daughter and their acquaintance, Donald Johnson ("Johnson"), were present in the apartment. The robbers wore hoods that obscured their faces. One of the robbers, who was wielding a knife, bound Green's hands with duct tape and stood guard while she was seated on the floor. W. McKenzie, who was in another room at the time the robbers forced their way into his home, exited the room to see what was happening. A struggle ensued between him and the two other robbers, who also had knives. W. McKenzie, was subdued and his hands and eyes were secured with duct tape.

  During that time, Johnson was in the room of Green's daughter playing a video game. After Green's daughter urged Johnson to help her father, he exited her room, armed with a pipe. Johnson engaged in a violent struggle with two of the robbers and received multiple stab wounds. Johnson was also hit, by one of the robbers, with a crutch that was in the apartment. He suffered a head laceration. Sometime during the robbery, W. McKenzie's brother arrived at the apartment and knocked on its door. One of the robbers opened the door and tried to grab W. McKenzie's brother and pull him into the apartment, but he ran away. Soon thereafter, the robbers left the apartment taking with them a quantity of jewelry and money.

  Two days after the robbery, Johnson saw a person on the street whom he believed to be one of the robbers. That person was the petitioner. Johnson notified the detectives investigating the robbery about his sighting and described the petitioner. The detectives went to the vicinity of reported sighting, arrested the petitioner and transported him to a police precinct. The petitioner

was taken to a second police precinct, where Johnson and W. McKenzie were brought to view a lineup. Johnson and W. McKenzie were informed by one of the investigating detectives that he had apprehended one of the robbers. Both Johnson and W. McKenzie viewed the lineup, independently, and identified the petitioner as one of the robbers. The next day, Johnson and McKenzie went back to the police precinct to express uncertainty to a detective about the respective lineup identifications they had made because, while walking in Bronx County, Johnson noticed a man who looked more like the robber than the person whom he had identified when viewing the lineup. Subsequently, the petitioner was released from custody.

On February 9, 1999, the detectives investigating the robbery learned that a fingerprint found on one of the crutches with which Johnson was beaten, matched one of the petitioner's fingerprints. On December 7, 1999, the petitioner was rearrested.

A grand jury indicted McKenzie on the charges of first-degree robbery, second-degree robbery, first-degree burglary and second-degree assault. At his trial, the prosecution introduced evidence, without objection, of the lineup identifications Johnson and W. McKenzie made of the petitioner. The jury learned that the two men had disavowed the identifications and also that Johnson and W. McKenzie were unable to identify the petitioner as a perpetrator of the charged crimes at the time the trial was held. On January 8, 2001, McKenzie was convicted for first-degree robbery, two counts of second-degree robbery and two counts of first-degree burglary. He was sentenced, as a second violent felony offender, to concurrent determinate terms of 18 years imprisonment on the first-degree robbery count, 18 years imprisonment on each of the burglary counts and 10 years imprisonment on each of the second-degree robbery counts.

McKenzie appealed from the judgment of conviction to the New York State Supreme Court, Appellate Division, First Department.  In that court, he argued that: (1) the evidence was insufficient to prove he was one of the robbers; (2) the trial court erred when it admitted testimony of the out-of-court identification of him into evidence; and (3) trial counsel rendered ineffective assistance to him by failing to object to the admission of evidence regarding the out-of-court identification of the petitioner, as no foundation for receiving that evidence had been laid by the prosecution.  On December 30, 2003, the Appellate Division affirmed McKenzie's conviction, determining that: (a) the verdict was based on legally sufficient evidence and no basis existed to disturb the jury's determination concerning the identification and credibility of witnesses; (b) the fingerprint evidence, standing alone established McKenzie's guilt beyond a reasonable doubt; (c) the lack of foundation for the admission of the lineup identification claim was unpreserved for appellate review; (d) McKenzie failed to establish that his trial counsel's failure to raise the issue of lack of foundation for the admission of the lineup identification constituted ineffective assistance; (e) McKenzie failed to show that his trial counsel's affirmative use of the lineup identification, coupled with the witnesses' purported disavowals, was not trial strategy; and (f) even if trial counsel's failure to object was not strategic, the error did not deprive McKenzie of a fair trial.  See People v. McKenzie, 2 A.D. 3d 348, 768 N.Y.S.2d 816-817 (App. Div. 1st Dep't 2003).  Thereafter, McKenzie sought leave to appeal to the New York Court of Appeals.  On April 20, 2004, the New York Court of Appeals denied McKenzie's request for leave to appeal to that court.  See People v. McKenzie, 2 N.Y.3d 764, 778 N.Y.S.2d 782 (2004).

On November 24, 2004, McKenzie made a motion to vacate the judgment of conviction, pursuant to New York Criminal Procedure Law ("CPL") § 440.10, arguing that his trial counsel

rendered ineffective assistance to him when he failed to take steps to prevent the admission into evidence of testimony regarding the pretrial identification that was made of him, as a perpetrator of the charged crimes.  According to McKenzie, the prosecution did not lay the requisite foundation for such testimony to be received in evidence.  On April 28, 2005, the New York Supreme Court, Bronx County, denied McKenzie's CPL § 440.10 motion because his ineffective assistance of counsel claim was "previously determined on the merits by the Appellate Division and there has been no retroactive change in the law that is relevant to this issue."  Moreover, the Supreme Court found that, McKenzie's reliance on an affidavit, prepared by his appellate counsel, in which she claimed that telephone conversations she allegedly had with McKenzie's trial counsel demonstrate that trial counsel had no strategic reason for failing to object to the introduction of evidence pertaining to the lineup identification, was misplaced because the Appellate Division had determined previously that, even if trial counsel's failure to object was not strategic, the error did not deprive McKenzie of a fair trial.

    McKenzie sought leave to appeal, to the Appellate Division, from the determination rendered on his CPL § 440.10 motion.  On June 14, 2005, the Appellate Division denied his application for leave to appeal to that court.  The instant petition followed.

### III. DISCUSSION

    An application for a writ of habeas corpus made by a prisoner in custody pursuant to a judgment entered in a state court may be granted only upon a finding that the prisoner is in custody in violation of the Constitution, laws or treaties of the United States.  See 28 U.S.C. § 2254(a).

The Sixth Amendment guarantees a criminal defendant the "right to effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984). To determine whether counsel's assistance was effective, the Supreme Court devised a two-part test. See id. at 687-96, 104 S. Ct. at 2064-69. First, a criminal defendant must show that his counsel's performance was deficient, that is, that it fell below an "objective standard of reasonableness," measured according to "prevailing professional norms." Id. at 687-88, 104 S. Ct. at 2064-65. Second, the criminal defendant must affirmatively demonstrate prejudice. Id. at 694, 104 S. Ct. at 2068. Prejudice is rarely presumed, and so the defendant generally must prove that "there is a reasonable probability that but for counsel's [error], the result of the proceeding would have been different." Id.; see also United States v. Javino, 960 F.2d 1137, 1145 (2d Cir. 1992). A reasonable probability has been defined as "a probability sufficient to undermine confidence in the outcome." See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Considerable deference is accorded counsel's performance, as counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690, 104 S. Ct. at 2066. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689, 104 S. Ct. at 2065 (citation omitted).

McKenzie contends his trial counsel failed to lodge an objection to the admission into evidence of testimony regarding the pretrial identifications made of him by two of the crime victims because counsel "was unaware that the identifications were inadmissible." More specifically, McKenzie asserts, that his trial counsel was unfamiliar with the applicable state law governing the admission into evidence of testimony respecting pretrial identifications.

6

According to McKenzie, this is " readily apparent" from two telephone conversations his appellate counsel allegedly had, in 2004, with his trial counsel concerning the assistance trial counsel rendered to McKenzie during the trial. McKenzie alleges that, during the first conversation, his appellate counsel inquired of his trial counsel whether he attempted to keep evidence of the pretrial lineup procedures out of the trial record, under CPL §§ 60.25 and 60.30, and whether he had a strategic reason for proceeding with a "misidentification" defense rather than a "no identification" defense. Trial counsel, McKenzie asserts, responded that he had no recollection and expressed anger about the telephone call "because he had received telephone calls from appellate counsel's office on two prior occasions and his statements during those calls had become the subject of CPL § 440 motions." McKenzie contends that, during the second telephone conversation his appellate counsel had with his trial counsel, trial counsel was uncooperative and stated that "he did not recall whether he had come on the case after the suppression hearing;" and that "he did not recall if he tried to keep out the lineups under CPL §§ 60.25 and 60.30."

  The respondent contends the record demonstrates that McKenzie's trial counsel's failure to object to the admission into the trial record of pretrial identification evidence was a trial strategy. According to the respondent, this is evident because McKenzie's trial counsel planned to counter the prosecution's case with, among other things, "[an argument] that the victims had excluded the possibility that petitioner had perpetrated the robbery." The respondent maintains that McKenzie's trial counsel: (i) announced, in his opening statement to the jury, that he would show the victim witnesses were unable to make a reliable identification of McKenzie; (ii) used the lineup identification evidence strategically during trial, while making proper objections; and

7

(iii) used the victim witnesses' uncertainty about their respective pretrial identifications during his summation to show reasonable doubt existed, warranting the jury in acquitting McKenzie of the charged crimes.

McKenzie attempts to rebut the presumption that his trial counsel rendered effective assistance to him, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, with his appellate counsel's assertions, in the memorandum of law that accompanies the application for the writ,[1] that the telephone conversations she allegedly had with his trial counsel, in 2004, demonstrate clearly trial counsel's lack of familiarity with the applicable state law.  However, McKenzie failed to submit any competent evidence that his trial counsel was unfamiliar with the applicable state law at the time of his trial.  Moreover, the alleged conversations between McKenzie's appellate and trial counsel do not demonstrate that trial counsel was unfamiliar with the applicable state law, but rather that he had no recollection pertaining to the issues inquired about by appellate counsel.  An attorney's "inability to remember his reasons for conducting the trial in the manner that he did [] is insufficient evidence to overcome the presumption of constitutionally effective counsel sustained by the record." Greiner v. Wells, 417 F.3d 305, 326 (2d Cir. 2005). Trial counsel's lack of memory is not sufficient to rebut the presumption that his failure to object to the admission of pretrial identification evidence into the trial record was sound trial strategy. Furthermore, the presumption that trial counsel's conduct was a manifestation of sound trial strategy is supported by the record, which demonstrates that trial counsel not only used the

---

[1] The Court notes McKenzie's failure to comply with its Individual Rules of Practice. They provide that, unless prior permission has been granted, a memorandum of law in support of a petition is limited to 25 pages and a reply memorandum is limited to 10 pages.  McKenzie's memorandum of law in support of his petition is 36 pages long and his reply memorandum is 12 pages long and does not contain a table of contents.

pretrial identification evidence during the trial and in his summation, but stated in his opening statement to the jury that he would demonstrate that the victim witnesses had doubts about the identification they made of McKenzie as a perpetrator of the charged crimes. "Without evidence establishing that counsel's strategy arose from the vagaries of 'ignorance, inattention or ineptitude,'" [] Strickland's strong presumption must stand." Id. (internal citation omitted). The Court finds that the petitioner has failed to establish that his trial counsel rendered ineffective assistance to him. Therefore, McKenzie is not entitled to habeas corpus relief, based on his claim, because he has failed to establish he is in New York State's custody in violation of the Constitution.

### IV. RECOMMENDATION

For the reasons set forth above, I recommend that the petition be denied.

### V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Laura Taylor Swain, 500 Pearl Street, Room 755, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Swain. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 470 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F. 3d 1049, 1054 (2d Cir. 1993); Frank v.

Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
      October 3, 2007

Respectfully submitted,

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Bonnie C. Brennan, Esq.
David Weisel, Esq.